Good morning, Your Honors. May it please the Court, Tyler Ayers for the appellant, Ms. Annexura Leon. Your Honors, we're here on a decision from the lower court to dismiss on a 12b6 motion, failure to state a claim upon which relief can be granted, and a denial of plaintiff's motion to amend the complaint. What I'd like to address first is the denial to a motion to amend the complaint. Well, actually, you didn't argue that in the brief, did you? We did actually argue that in the brief. We didn't label it, but we substantively argued it, Your Honor. We argued that we should be able to – well, we spent the bulk of the time on the motion to dismiss, but I believe we substantively argued that we should be allowed to amend. And the reason we should be allowed to amend is to – Well, I just went to where in your brief you made that argument. So, Your Honor, I apologize. I have a really – it would take most of my 15 minutes to go through the – Well, I think if you're going to raise something that was – whether – when it was disputed that you raised the issue on appeal, I think you should be familiar with the record. No, I'll answer your questions. Just let me find his – let me consult with counsel, Your Honor. Is that an issue presented? Oh, same guy. I shouldn't have excused him. Your Honor, ultimately, what we referenced was the initial fact – or the facts in the amended complaint. And it is included in the facts in the amended complaint. Ultimately, for purposes of this presentation, rather than take all of my time for that, I'm happy to move on to the next point, which I think is the more – Okay. Go ahead. The more significant point – I'm sorry, but do you think it doesn't matter if we look – which complaint we look to? No. I think it's very important that we look at the second amended complaint because that's the amended complaint that ultimately we were able to create after we had received a response from the – our government records request and we had the video. Okay. And so that's why there was a change and that's where the second amended complaint came from is that we had more facts once we actually had the video. But the district court denied your motion to amend. Yes. And there's a standard of review we have for that, but that's never addressed in your brief. You never argue why the district court was wrong to deny your motion to amend again. I understand, Your Honor. And so that's – I appreciate your point. That's a big hurdle to overcome. I appreciate your point, and rather than arguing something that is a big hurdle, I'd like to go on to the motion to dismiss, then, Your Honor. What if that argument is gone? Does that affect the rest of your argument? If the – no, it actually doesn't. It's independent. I mean, I see these as two different remedies for us. Either the motion to dismiss was wrong or the motion to dismiss was right and we would receive leave to amend because leave to amend is generally freely granted. And the whole point of the pleadings is to get to the truth and the justice. And if the pleadings don't happen to address everything just perfectly, rather than decide a case on the procedural niceties, the court – the Tenth Circuit Court would prefer and has indicated in several cases that they would prefer to decide a case on the merits. Well, nobody's addressed the merits of this case. Where do you – let's get to the merits, then. Where do you allege Fax supporting an arrest in the complaint? I don't see anything to indicate he was arrested in your – in the operative complaint, we'll call it. In the – well, he was arrested, or she was arrested. Sorry, even I said it wrong. She was arrested and she was taken into custody. She was taken into custody and taken to the police station. And that is in – I believe that's in the operative as well as the – No, that's not in the operative complaint. Well, it's certainly in the second amended complaint, Your Honor. So that's a big difference. That's why you – okay. It's not in the complaint that the court ruled on. Well, and the court's ruling is interesting because the court's ruling refers to both complaints. In the footnotes, they make reference to the second amendment complaint as well as the first amended complaint that they refer to as the operative complaint. And so they clearly had those facts in front of them, and they simply chose not to consider those facts. So they were really more – the lower court, to use the words of the Tenth Circuit Court, decided this on a procedural basis and did not actually address the merits. What was the moment of arrest? I haven't been able to tell that from what I've read. The moment of arrest was immediately following the conclusion of the standardized field sobriety test and prior to the officer's request to give the – to take the portable breath test, right? No, I've been talking to you. On that point, the timing – you've switched positions, haven't you? Didn't your original complaint say – To the final one, yes, because normally in DUI stops, it's done exactly how we had it in the first complaint. It wasn't until we received the video from the government that we were able to see that it wasn't done that way this time. What made it that moment of arrest? What happened that you can tell? The way the officers do this typically is they ask them to perform a third test where they put their hands behind their back and then they place handcuffs on them. So the answer is when the handcuffs went on. When the handcuffs went on. All right. And you've referenced the video, which I'd be very interested to see, which I see is in the trial record, but I don't see that's in the appellate record. That's our mistake then, Your Honor. We should have sent that over. So we're happy to make that available. It is in the trial record, and the trial court did have the opportunity to review that. With regard to the importance of this case, the issues that we see that this is important to is what we have here is an individual who was cited for DUI who wasn't a drunk driver. Nothing about her conduct indicated that she was a drunk driver. She had no driving pattern. She did not have slurred speech. She spoke quickly, but she was nervous. I'm speaking quickly. Trust me. There's nothing about me that's impaired at this point. I'm simply nervous, which is the same as her. She didn't have red bloodshot eyes. She didn't have flushed skin. She got out of the car just fine. She was uber compliant with the officer. But she had the A1 card, which is she admitted that she'd been drinking. She said that she had a drink at lunch. It was approximately 3 o'clock in the afternoon. So lunch was at least a couple hours prior. Again, she was simply trying to be very honest with the officer and not be deceptive in any way. She opened her trunk for the officer and gave permission for the officer to find the correct license plate. It wasn't until she had been stopped for 19 minutes and a backup officer arrived that the officer makes any mention of the odor of alcohol. After he's been with her in close proximity, talking to her for 19 minutes, and then the backup officer, Sergeant Bowers, says, Oh, did you smell that odor of alcohol? And that's when the DUI investigation begins. It's not the initial officer. And that's what the second amended complaint alleges. And again, those are facts that came from the video. Those are not facts that were available to us from Ms. Leon. She doesn't know what the two officers are discussing until we get the video. So we certainly may be guilty of prematurely filing this. Maybe we needed to wait until we got the video. But we file enough of these cases that we thought we knew about what had happened. And then when we got the video, we saw that there were exceptional circumstances in this case. And that's what caused us some concern for the rest of the public. If Summit County's policy is simply to file the charges in the court immediately upon receipt of the citation from the officer, that leaves a subset of people, and granted, it's a narrow subset, because in most DUI situations you're going to have a driving pattern or you're going to have obvious indicators of intoxication. The fact of the matter is it's not difficult to tell when somebody is intoxicated. And when you see those things, officers don't have – I mean, it's not a high burden when somebody's actually intoxicated. But in a situation like this, where there was no evidence referred to of actual intoxication, observations of actual intoxication, and even the standardized field sobriety tests, again, as we're looking at the video, which was only available to us prior to the second amended complaint, the officer doesn't perform the standardized field sobriety tests in conformance with NHTSA standards. NHTSA standards require that the stimulus from the eye be 12 to 15 inches. This officer was nearly touching her nose, which will – But none of this is in your complaint. It is in the second amended complaint. Well, that's the problem for you. Let me ask you about the policy of the county. This is another thing that's not in the operative complaint. If you're planning malicious prosecution, that requires that your client have been put in custody under the charge in some way. Was she ever, after the county prosecuted, filed charges, was she ever in custody as a result of that? No. She was never taken into custody as a result of the charges. So there's no Fourth Amendment malicious prosecution claim. She was required to present herself in court three times. So, no, she was never taken into custody. She was required to appear in court three times. Right. After the charge was filed. And she was out on her own recognizance. No, she did post bail. She posted bail. Okay. So she did post bail. Yeah. She posted bail, which she received a full refund for. She posted the entire bail. But ultimately, she was never taken back into custody. And she was not incarcerated. She was taken to the jail. They took a blood test. And then she was released to her husband. So she wasn't actually taken into custody in the sense that she was incarcerated. But she was taken into custody when the cuffs were put on her. And ultimately, the policy that I'm concerned about, in this instance, the officer, I believe, would be in. I was probably imprecise in my question. I'm going to talk about custody after she was handcuffed that day. You said charges were filed without awaiting the county. Had charges filed before the blood test or whatever came back. After charges were filed, she was in court? Yes. And she had posted bail? Yes. So she was brought into court and bond was set. Right. Okay. Right. And so I lost my train of thought. I'm sorry. No problem, Your Honor. If there are no other questions, I'll reserve the remainder of my time for rebuttal. May it please the Court, good morning. I don't think it's an insignificant fact, Judge Hartz, that there was not any briefing on the second amended or proposed leave for second amended complaint. In fact, the standard, and I believe this is in the opinion by Judge Neufer, he denied it because it was futile. But that's an abuse of discretion standard, not a de novo review standard under 12b-6. Wait, wait, wait. If it's based on the fact that any amendment would be futile, we review that de novo, don't we? I thought it was an abuse of discretion standard. Maybe overall abuse of discretion, but specifically if the judge refuses to allow an amendment on the basis that amendment would be futile, we review that de novo. We can. There's no discretion involved. We can look at the proposed amended complaint and say and agree or disagree that it fails to state a claim. I think that part of it is de novo. That could very well be. My point was since it's not briefed, since there's no standard, since there's no anything, I think the issue has been waived. But let's go back to really trying to simplify this case because I think it's really a relatively simple case. Two 12b-6 motions were filed based upon the original complaint and the amended complaint both granted. Basically why? Because if you look at the facts of those two complaints, you have a situation where you have a driver. The stop's not at issue. It was clearly an invalid registration, so that's not at issue. So the question is the expansion of the stop after the driver says I had a beer at lunch. The officer also smelled alcohol, the odor of alcohol in the car. He also had, as you described in his report, which is alleged I think in the second complaint, that she was talking in a rapid way. You say second complaint, you mean the operative complaint? Yes. Yes, sir. But I think Judge Newford's opinion sort of said I'm taking all the facts in the complaint and the amended complaint. And I think he sort of. In the complaint and the amended complaint or the complaint and the second amended complaint? No, the complaint and the amended complaint. He shouldn't be considering anything in the complaint that's been superseded. Well, they alleged it and it's in the operative complaint. But in any event. There are some things alleged in the complaint that are helpful to you that were dropped in the second amendment. That's true, too. In the operative complaint. For example, I think this statement that she refused to take the portable breath test. That's right. The point being is this. Vrondak, which we think is controlling with respect to whether there was reasonable suspicion to justify the stop. There was reasonable suspicion based upon the facts that the officer had as alleged in the complaint to basically expand the stop to conduct field sobriety tests. Vrondak, the only thing the fellow said was, I had a beer. I had it three or four hours before. I had a third of it. And the court said in that circumstance, without any smell, without anything else, that was sufficient to allow for the field sobriety test. Now, Judge Hart, you dissented in that. That doesn't matter. I mean, I was overloaded. That's true. But the point is we have more here. We have an admission. We have a smell. And we have some behavior that the officer had to justify the field sobriety. I don't think there's any question. There's no case inside the case that says that's not reasonable suspicion, that's not appropriate on the Fourth Amendment. So that's the first issue. What behavior? Talking too fast. The last case was the defendant was talking too slowly. Well, this was in the report and is in, as alleged, by the plaintiffs. But in any event, it's another. I don't think it matters. Even if you take that out. I think if you admit you're drinking and you have the smell of alcohol in the car, that's enough to justify a field sobriety test. Okay. Then the next question is probable cause. Was there sufficient probable cause to make an arrest? We rely on Wilder. Wilder is a situation where the fellow is going too fast, 57 in a 50, he gets stopped. Officer approaches him and basically says, smells alcohol and says, have you been drinking? He says, yeah, I had a glass of wine 10, 15 minutes before. He then says, okay, we'd like to have you do some field sobriety tests. Guy says, nope, not going to do it. And he arrests him right then and there. The issue in that case was, was that adequate probable cause under those facts to make an arrest? This court said, yes. So you had basically in that case, you had an admission of drinking, you had the smell of alcohol, and you also, he described some other sort of watery eyes and flush face. I agree that's in the case too. But basically you had a refusal and then a refusal and that was adequate. What do we have here? We have, I admit that I'm drinking and I'm also refusing ultimately to take the portable breath test which was offered to her. Except that's not in the operative complaint. They dropped that from the operative complaint. Which suggests there's, the operative complaint also doesn't show an arrest. So I don't know how we deal with this. And you're quite right. If you don't have a custodial situation, you don't have a 1983 malicious prosecution case. But Judge, I would say in any event, you have probable cause. That's sufficient for purposes of. But it's not probable cause based on the operative complaint, unfortunately. Based on any fact pattern here, there was probable cause for this officer to make an arrest. He gave the field sobriety test. I'm sorry. Okay. What does the operative complaint say about the field sobriety test? It says nothing about the breath test, as I recall. That's true. They brought that into the second complaint. But I really, and I'm sorry, Judge, I don't know precisely. But I do think Judge Neufer thought that it is appropriate under these circumstances to consider the totality of the factual assertions in both complaints. That's wrong. We have cases saying a new complaint supersedes anything in the prior complaint. In the operative complaint, they basically dropped the concept of refusal on the test. This is where they say she spoke quickly, odor of alcohol, and she admitted she consumed one beer at lunch, which was relatively close to the time she was stopped. That's within here. And then on field sobriety, I believe they say she was given field sobriety tests. Yes. She had to perform field sobriety tests as well. So that all was the basis upon which the arrest was made. Once again, that's basic. That's like probable cause in any DUI stop. And quite frankly, there are no cases, I haven't seen any cases where any of this is inadequate. It's totally adequate. So those are the two issues. It's not that complicated. It's different, though. Wilder's different in that the driver there acknowledged having drunk the wine 15 minutes before. And here, I have never been able to tell the time to stop, but counsel said 3 o'clock. Would the body absorb one beer in two plus hours? Well, I'm not in a position because I don't know that about the expert. If it would, and that was a true statement by her, then that's a different case, isn't it? Not in a material way because you have an admission of drinking. And you have a refusal. But if you give me that, if you give me that the body will absorb one beer in two plus hours, then so what? You have an admission of drinking. Unless you're saying that that gives reasonable suspicion that, in fact, she'd been drinking a whole lot more. Well, I'm not saying that. I'm saying that probable cause existed by the admission of drinking and the smell of alcohol in the car and the admission of field sobriety test to her, which the officer obviously determined she did not do well on and therefore took her into custody for DUI. That's in the operative complaint. One last follow-up on this point, and then I'll give it up. What if she had said, I had a beer for breakfast? Your position's the same? Well, I'm sorry. I had a beer, but it was for breakfast, not for lunch. Well, I think time obviously would have some importance, just like it did in Brondack. Because even that court was concerned it was a closed call because it was three or four hours before. The fellow said he had one-third. So they were sort of assuming that perhaps that was reasonable suspicion, but it really didn't isolate and enhance the fact that maybe he was under some influence of the alcohol. But in any event, these are fact-sensitive matters, Judge. I realize that. I just think that while there's very much analogous to the facts here, and I think what you have here is definitive with respect to the probable cause and reasonable suspicion, as Judge Newfor found. The only final thing I say on malicious prosecution, by the way, I think malicious prosecution goes out because there's probable cause in what the officer did. And you have to obviously have no probable cause to even get the first base on a malicious prosecution. You're quite right about the custody thing, too, in 1983 litigation for sure. However, the immunity question, which Judge Newfor wrote about, that is to say that Summit County could sort of adopt the immunity jurisprudence with respect to its prosecutor, therefore, the malicious prosecution claim is not valid. Frankly, I don't think that's necessary to go there, A. B, I'm not sure there's any particular case that says that. And C, I think if we look at Monell liability, the analysis is really quite a bit different than immunization adopted by a prosecutor. So what I'm saying is there's adequate probable cause here. And also 77720, which is the Utah statute, I'm sure this is true in every state, but I don't know that. The issue of citation, if somebody comes in and contests the citation, then they file an information, a criminal information. And then you go to Matt on that, basically. Same thing in Utah. Citation issued, if you plead not guilty, you contest the allegation, then an information is issued by the prosecutor. The point is the citation itself by statute requires the officer to state certain facts when they electronically transmit it to the justice court. One of which is not only the name, rank and serial number of the particular defendant, but also this is the crime that was committed by this particular individual. So it's not sort of absent from even the citation, some indicia of probable cause and good faith for doing it. And that's the other thing, too. Obviously, under this fact pattern, you could not possibly say that any prosecution of Ms. Leon was somehow for an improper purpose or for some wrong purpose or for any other purpose that isn't consistent with law enforcement. The fact that ultimately the case was dismissed, which I think was reasonable and appropriate by some county, when the blood alcohol came back .01, well, that's the way the system works. And as a practical matter, I think that was an appropriate thing to do. So that's how I deal with the malicious prosecution. Unless you have any other questions, I have none. Thank you, counsel. Great. Thank you. Thank you, Your Honors. I just want to address a couple of things that he brought up. First of all, I would like to address the Minter. The Tenth Circuit Court in 2006 made the decision in the Minter case. And there they made some important statements. First of all, they said that they wanted to end the sporting theory of justice in court so that it wasn't simply a matter of getting all of the procedural aspects right or who had the best racehorse. There's no question that as a small office, we may not know how to do all of these things. But we're here fighting for somebody who was arrested that didn't commit a crime, that has been labeled as a drunk driver when she wasn't, because she admitted to having consumed alcohol in an effort to be very candid. Now, the defense, they point to both the Vondrack and the Wilder case. The Vondrack case is distinguishable because the standards for DUI in New Mexico are different than the standards in Utah. In DUI, what the statute says is that anybody who's impaired to the slightest degree can be guilty of a DUI. In Utah, the standard is incapable of operating a vehicle safely. Now, you can certainly be impaired to the slightest degree by simply admitting to having consumed alcohol. But it is not a reasonable inference that you are going to be incapable of operating a vehicle safely because of the mere consumption or odor of alcohol. So that's a very different standard. And likewise in Wilder, the court recognized that there are a bunch of different factors there. The red bloodshot eyes, the driving pattern, the flush face, the irregular speech, none of those things are factors in this case. Ultimately, to answer your question from earlier on, the facts that we've alleged to with regard to our arguments on the denial to amend are found in pages 25 through 30. We've alleged all of those facts as facts that were in the second amended complaint, which Judge Newfer references in his footnotes towards the end. He says that he's considered those, and even in the second amended complaint, there are no distinct facts that give us any possibility of recovery. Thank you. That's all I have, unless you have questions. Thank you, counsel. Case is submitted. I'm a little reluctant to excuse you guys if you're going to keep coming back. Are you done? We're done. Okay. You're excused. And we'll take a recess. There will be no more than ten minutes, so please stand by.